# MICHIGAN INSURANCE BANK *v.* ELDRED.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WISCONSIN.

No. 1288. Argued January 29, 1892. — Decided February 29, 1892.

After the term at which a trial took place has expired, without the court's control over the case being reserved by standing rule or special order, and especially after a writ of error has been entered in this court, the court below cannot allow a bill of exceptions then first presented, or amend a bill of exceptions already allowed and filed.

Under the Code of Wisconsin, an express denial, upon information and belief, that the plaintiff was, at or since the commencement of the action, or is now, a corporation, puts in issue the existence of the corporation.

The conversion of a state bank into a national bank, with a change of name, under the National Banking Act, does not affect its identity, or its right to sue upon liabilities incurred to it by its former name.

If the whole evidence introduced by the defendant upon one issue is incompetent to support it, and is admitted and considered against the plaintiff's exception, and the judge, by ruling that this evidence is decisive against the the plaintiff's right to recover, without regard to another issue in the case, induces the plaintiff not to put in evidence on the other issue, the plaintiff is entitled to a new trial, although he has not also excepted to a direction to return a verdict for the defendant. .

THIS was an action by the Michigan Insurance Bank, a corporation created and organized under the laws of the State of Michigan, against a citizen of Wisconsin, upon a judgment recovered by the plaintiff against him on May 13, 1862, in an inferior court of Michigan for the sum of $4211.56. In the present action, the writ was dated May 11, 1872, and appeared by the marshal's return thereon to have been served on June 3, 1882. The defendant originally pleaded the statute of limitations of ten years, and on that issue obtained a verdict, the judgment on which was reversed by this court at October term, 1888, because evidence, introduced by the plaintiff, that within the ten years the summons had been delivered to the marshal for service, had not been properly submitted to the jury. 130 U. S. 693.

The defendant thereupon obtained leave from the Circuit Court to amend his answer, by adding, as a distinct defence, the following: "Said defendant denies, upon information and belief, that at the time of the commencement of this action the said plaintiff was, or is now, a corporation created or organized under the laws of the State of Michigan, or under the laws of any other State, Territory or government: and said defendant futher specifically denies, upon information and belief, that said plaintiff at the time of the commencement of this action was, or at any time since then has been, or is now, a corporation."

On June 24, 1891, the case came on again for trial before the Circuit Judge, when the plaintiff put in evidence its articles of incorporation under the laws of Michigan, and the record of the judgment sued on; and rested its case.

To support the defence of the statute of limitations, the defendant put in evidence the writ and the officer's return.

In support of the other defence, the defendant offered in evidence duly certified copies of the following documents, all in accordance with the National Banking Act of June 3, 1864, c. 106: 1st. Articles of association, dated June 26, 1865, executed by the plaintiff's directors, by authority of two thirds of its stockholders, changing and converting it into a national bank, by the name of the National Insurance Bank of Detroit. 2d. The organization certificate, of the same date, executed by the plaintiff's directors, under the same authority. 3d. Instruments signed by such stockholders, conferring such authority. 4th. A certificate, dated July 13, 1865, of the Comptroller of the Currency, that the association had complied with the provisions of law, and was authorized to commence business. 5th. A certificate of liquidation, made by the cashier of the association to the Comptroller of the Currency, dated March 1, 1869.

The plaintiff objected to the admission of these documents, " because, if received in evidence, they do not show that the plaintiff does not exist as a corporation; they simply show the organization of a corporation called the National Insurance Bank of Detroit: " and also " because the incorporation of the plaintiff is not affirmatively and specifically denied in the answer, but denied on information and belief." The objections were overruled, and the documents admitted in evidence, and the plaintiff excepted to the ruling.

The defendant then rested; and the plaintiff moved that all of the defendant's evidence be stricken out, for the reason, if it be assumed to be correct, it has not made out any case." The judge said: " I think on the record as it now stands — on the proof as it now stands — the Michigan Insurance Bank became defunct and ceased to exist in 1865, when the national bank was organized;" and refused to grant the motion; and the plaintiff excepted to the refusal.

The subsequent part of the bill of exceptions contained no further exception of the plaintiff, but consisted (except the formal conclusion) of a stenographer's notes of a desultory conversation between the presiding judge and the plaintiff's counsel, upon the question whether the plaintiff should intro-

duce evidence, which he said he had, to show that the statute of limitations had not run ; and ending as follows :

The judge said, " Even if the right of action was not barred, you cannot recover." The plaintiff's counsel repeated that the defendant had offered in evidence the writ and the officer's return to prove that the action was barred by the statute of limitations ; and that the plaintiff had evidence that the summons was placed in the marshal's hands for service within ten years after the cause of action accrued, but there would be no use in putting in that evidence; if, regardless of it, the court would charge the jury to bring in a verdict for the defendant. Thereupon the judge said, " I think I will," and instructed the jury to return a verdict for the defendant, and they did so.

The bill of exceptions was signed by the judge on June 24, and filed on June 25, 1891, before the adjournment of January term, 1891. This writ of error was sued out on June 25, and was entered in this court on July 22, 1891.

At the present term of this court, the case was advanced for hearing, on motion of the defendant in error, under Rule 26, clause 4, because it had been once adjudged by this court on the merits.

On January 26, 1892, the plaintiff in error moved for a writ of certiorari to bring up the record of the following proceedings at January term, 1892, of the Circuit Court.

On January 16, the Circuit Judge, on the application of the plaintiff's attorneys, and upon its appearing to his satisfaction, "from the stenographer's report of the testimony and trial, that the plaintiff omitted, in the bill of exceptions heretofore signed," two exceptions which were taken at the trial, ordered, against the objection and exception of the defendant, that the original bill of exceptions be amended by inserting after the judge's words, " I think I will," the words, " to which ruling the plaintiff duly excepted ; " and, after the instruction to return a verdict for the defendant, the words, " to which the plaintiff duly excepted." On January 18, after the bill of exceptions had been amended accordingly, the judge signed it *nunc pro tunc* as of June 24, 1891, and ordered it to be filed

*nunc pro tunc* as of June 25, 1891, being the days when the original bill of exceptions was signed and filed.

By direction of this court, the question whether the writ of certiorari prayed for should issue was argued with the merits of the case.

*Mr. George P. Miller* for plaintiff in error.

*Mr. Alfred L. Cary* and *Mr. F. C. Winkler* for defendant in error.

I. Under the Wisconsin statute the service of the process was the *prima facie* time of the commencement of the action. Sec. 27, c. 138, Rev. Stat. of 1858. The other time recognized is delivery to the officer "with the intent that it shall be actually served." *Ibid.* One of these two things must be shown to have been done in this action within ten years after the rendition of the judgment sued on. The plaintiff's proofs show a judgment rendered in Michigan May 13, 1862. Had they shown service within the ten years it would have made the plaintiff's *prima facie* case. But it showed service only on the 3d day of June, 1872, just three week after the ten years expired. It was incumbent therefore on the plaintiff to prove the delivery to the marshal with the proper intent within the ten years. He rested without attempting it. On the evidence before the court he had no claim to a recovery against the defendant.

II. The logical effect of the decisions and of the act of Congress (Rev. Stat. § 5154) would seem to be that upon the conversion of a state bank into a national bank, all of its property, rights, privileges and franchises, including its corporate existence, would pass to and be merged in the national bank. What necessity for and how could the state bank exist after it had been stripped of all its property, rights and franchises? If it could still exist as a state corporation for any purpose, it would still be under the control of the state, which is obnoxious and repugnant to the authority exercised by Congress over national banks. The act of Congress certainly does not

contemplate the existence of two banks after the conversion. Hence the state bank must cease to exist for all purposes. *National Bank* v. *Colby*, 21 Wall. 609; *Casey* v. *Gallie*, 94 U. S. 673, 678; *Farmers' & Mechanics' Nat. Bank* v. *Dearing*, 91 U. S. 29, 33.

Plaintiff's conversion into a national bank was completed July 13, 1865, nearly seven years before this action was commenced, and if we are right, plaintiff ceased to exist as a corporation at that time.

MR. JUSTICE GRAY, after stating the facts as above, delivered the opinion of the court.

By the uniform course of decision, no exceptions to rulings at a trial can be considered by this court, unless they were taken at the trial, and were also embodied in a formal bill of exceptions presented to the judge at the same term, or within a further time allowed by order entered at that term, or by standing rule of court, or by consent of parties; and, save under very extraordinary circumstances, they must be allowed by the judge and filed with the clerk during the same term. After the term has expired, without the court's control over the case being reserved by standing rule or special order, and especially after a writ of error has been entered in this court, all authority of the court below to allow a bill of exceptions then first presented, or to alter or amend a bill of exceptions already allowed and filed, is at an end. *United States* v. *Breitling*, 20 How. 252; *Müller* v. *Ehlers*, 91 U. S. 249; *Jones* v. *Grover & Baker Co.*, 131 U. S. appx. 150; *Hunnicutt* v. *Peyton*, 102 U. S. 333; *Davis* v. *Patrick*, 122 U. S. 138; *Chateaugay Co., Petitioner*, 128 U. S. 544.

The duty of seasonably drawing up and tendering a bill of exceptions, stating distinctly the rulings complained of and the exceptions taken to them, belongs to the excepting party, and not to the court; the trial court has only to consider whether the bill tendered by the party is in due time, in legal form, and conformable to the truth; and the duty of the court of error is limited to determining the validity of exceptions duly ten-

dered and allowed. *Hanna* v. *Maas*, 122 U. S. 24. Any fault or omission in framing or tendering a bill of exceptions, being the act of the party and not of the court, cannot be amended at a subsequent term, as a misprision of the clerk in recording inaccurately or omitting to record an order of the court might be. *In re Wight*, 134 U. S. 136.

The writ of certiorari prayed for must therefore be denied, and the case must be determined upon the original bill of exceptions.

By that bill of exceptions it appears that before the last trial the defendant, by leave of court, amended its answer by adding, as a distinct defence, that "said defendant denies, upon information and belief, that at the time of the commencement of this action the said plaintiff was, or is now, a corporation created or organized under the laws of the State of Michigan, or under the laws of any other State, Territory or government; and said defendant further specifically denies, upon information and belief, that said plaintiff, at the time of the commencement of this action was, or at any time since then has been, or is now, a corporation."

Section 4199 of the Code of Wisconsin provides that "in actions by or against any corporation it shall not be necessary to prove on the trial the existence of such corporation, unless the defendant, by his answer duly verified, shall have specifically denied that the plaintiff or defendant, as the case may be, is a corporation."

The scope of this section is shown by comparing it with the general provisions of section 2655 of the same code, that the answer of the defendant must contain "a general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief." A denial of the fact that the plaintiff is a corporation must be specific and not general, and a denial of any knowledge or information thereof sufficient to form a belief is not enough. *Crane Co.* v. *Morse*, 49 Wisconsin, 368; *Concordia Savings Association* v. *Read*, 93 N. Y. 474. But an express denial that the plaintiff is a corporation is not the less specific, because made upon informa-

tion and belief; and such a denial puts in issue the existence of the corporation. The plaintiff's objection to the form of the answer cannot be sustained.

The defence in question is in terms and effect a denial that the plaintiff at or since the time of the commencement of this action was or is now a corporation. This was not merely *misnomer*, properly pleadable in abatement only; it was, in substance, *nul tiel corporation*, which is a good plea in bar, although it would have been waived by the first answer to the merits of the case, but for the leave, expressly granted by the court, to plead it afterwards. *Baltimore & Potomac Railroad* v. *Fifth Baptist Church*, 137 U. S. 568, 572; *Society for Propagating the Gospel* v. *Pawlet*, 4 Pet. 480, 501; *Jones* v. *Foster*, 67 Wisconsin, 296.

The evidence offered by the defendant on this point wholly failed to support this defence, and at most only proved that the plaintiff sued by the wrong name. It showed no more than that the plaintiff corporation, having been originally created by the laws of Michigan, had, in accordance with the National Banking Act, become a national bank, and its name been changed accordingly, without affecting its identity, or its right to sue upon obligations or liabilities incurred to it by its former name. Act of June 3, 1864, c. 106, § 44; 13 Stat. 112; Rev. Stat. § 5154; *Metropolitan Bank* v. *Claggett*, 141 U. S. 520; *Atlantic Bank* v. *Harris*, 118 Mass. 147; *City Bank* v. *Phelps*, 86 N. Y. 484, and 97 N. Y. 44.

The admission of this evidence was objected to by the plaintiff, upon the very ground that it did not prove the non-existence of the plaintiff as a corporation; and an exception to its admission was duly taken and noted, and embodied in the bill of exceptions.

The plaintiff afterwards renewed the objection, by moving "that all of the defendant's evidence be stricken out, for the reason, if it be assumed to be correct, it has not made out any case." The reason assigned by the judge for refusing to grant this motion was his erroneous opinion that on the proof as it stood "the Michigan Insurance Bank became defunct and ceased to exist in 1865, when the national bank

was organized;" and the plaintiff again excepted in due form.

Although the subsequent proceedings had at the trial, and stated in the original bill of exceptions, do not appear on this record to have been excepted to, yet those proceedings may properly be considered for the purpose of showing, as they do beyond doubt, that the judge's rulings in favor of the defendant proceeded solely upon the incompetent evidence to the admission and consideration of which the plaintiff had persistently excepted; and that it was only by the judge's statements that that evidence was decisive against the plaintiff's right to recover, even if the action was not barred, and that he should instruct the jury accordingly, that the plaintiff was induced not to put in any testimony upon the issue of the statute of limitations. If the plaintiff had put in its testimony on that issue, the case would have stood just as it did when before this court at a former stage; and, as was then adjudged, a direction to return a verdict, without submitting that issue to the jury, would have been erroneous, and would have entitled the plaintiff to a new trial. 130 U. S. 693.

The admission of the incompetent evidence on the issue of *nul tiel corporation* having thus clearly prejudiced the plaintiff, the order must be

*Judgment reversed, and case remanded, with directions to set aside the verdict and to order a new trial.*

MR. JUSTICE BREWER dissented.