## McDONALD v. HARDING, District Judge.

### No. 6681.

Circuit Court of Appeals, Ninth Circuit.
March 21, 1932.

George B. Grigsby and Harry G. McCain, both of Ketchikan, Alaska, and Robert W. Jennings, of San Francisco, Cal., for petitioner.

Howard D. Stabler, U. S. Atty., of Juneau, Alaska, for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This is a hearing on the return of the judge of the United States District Court for the Territory of Alaska, First Division, to an order to show cause why mandamus should not issue commanding him to settle a bill of exceptions in the above-entitled

cause. An order to show cause on the petition was issued by this court.

The record before this court consists of the petition, the return to the order to show cause, the answer to the return, and three affidavits attached to the respondent's points and authorities. All the pleadings are verified.

There is a sharp conflict as to certain material facts, but, with one or two exceptions, we are adopting the petitioner's version, so far as it goes.

On May 2, 1931, the petitioner, having been theretofore convicted of murder in the first degree in the District Court sitting at Ketchikan, Alaska, was sentenced by the respondent to imprisonment for life.

On the day sentence was pronounced, the following proceedings were had, according to the minutes of the court: "Whereupon court adjourned sine die, subject to signing a decree in No. 1370 K. A. and subject also to the signing and settling a Bill of Exceptions in connection with an appeal in the case of the United States vs. Burton G. McDonald, No. 1154 K. B., for which purpose only the term shall be considered as continued."

The petitioner avers that the time within which an appeal could be taken in this case expired on July 31, 1931. He also states that, at the time of his sentence, he was wholly without funds; that at said time his counsel asked the court for a stay of execution for thirty days, which request was refused by the court; that thereafter the petitioner was removed to the penitentiary at McNeill's Island, Wash., and shortly afterward to Leavenworth, Kan., where he is now confined.

On July 15, 1931, the respondent granted the petitioner two days' additional time in which to prepare a bill of exceptions. On July 17, the respondent granted a further extension to July 25, 1931.

On July 25, in an informal conversation out of court, there being no session of the court on that day, the respondent informed the petitioner's counsel that he would take up the matter of a further extension of time within which to file a bill of exceptions on Monday, July 27, 1931.

Regarding this above "informal conversation," the respondent makes the following statement in his return to the order to show cause: "Thereafter, about 6 o'clock p. m., on Saturday, July 25, 1931, said attorney called me on the telephone at my home and stated that the time for filing the Bill of

Exceptions in the McDonald case expired on that day, but that if it was satisfactory to the court and the court was willing to issue a nunc pro tunc order on Monday, July 27th, * * * he would take the matter up on said July 27th; whereupon I informed said attorney that I would not state whether or not I would allow further extension of time, and that I did not have an opinion as to the validity of a nunc pro tunc order, but that if counsel was satisfied with the validity of a nunc pro tunc order, I would take up the matter on Monday, July 27th, and if further extension of time was then authorized, would issue a nunc pro tunc order as of that date; whereupon counsel said he was satisfied of the validity of a nunc pro tunc order and would take up the matter on Monday, July 27th. I specifically state and certify that on July 25th I did not grant any extension of the time; and nothing was said or done on that day, or on any previous day, toward extending the time beyond July 25th than as aforesaid."

On July 27, the following orders were entered:

"Now at this time on motion of George B. Grigsby, the court extended the time to file a Bill of Exceptions to and including July 31, 1931.

"On motion of George B. Grigsby, attorney for the defendant, in the above entitled action, it is hereby ordered that the time within which defendant herein may serve and file a Bill of Exceptions herein is hereby extended to and including the 31st day of July, 1931. It is further ordered that this order go into effect nunc pro tunc as of the 25th day of July, 1931."

In this connection, the respondent asserts:

"On July 27th, said attorney requested an extension of time which would have been beyond the time allowed for appeal; but I specifically informed him, in open court, I would not grant any extension beyond the time allowed for appeal, and limited the time as shown in the last orders quoted. No extensions of time referring to the Bill of Exceptions, other than those hereinbefore mentioned, were requested or granted in said cause.

"As petitioner states * * * the time within which appeal could be taken in said cause expired on July 31, 1931. On July 31, 1931, petition for appeal was presented to the court and an order allowing appeal was granted. Assignment of errors was filed on said date."

On July 31, an admittedly "inaccurate" bill of exceptions was lodged with the clerk of the District Court. The petitioner asserts that, on that day, his counsel informed the respondent that a bill of exceptions had been "filed" with the clerk. The respondent categorically denies this, "to the best of his recollection."

The petitioner avers that after July 31, 1931, no further proceedings were had in the case until about September 10, 1931. The interval was spent by petitioner's counsel in efforts to obtain funds wherewith to pay for a transcript of the testimony.

According to the respondent, several weeks after July 31, in open court, the following occurred: "I inquired of petitioner's attorney as to the whereabouts of the Bill of Exceptions upon which the assignment of errors was based, at which time said attorney stated that a Bill of Exceptions had been left with the Clerk of the Court on July 31st, but that it was not the Bill of Exceptions upon which counsel expected to rely; that it was filed merely for the purpose of preserving his rights; that he was not certain that a Bill of Exceptions would be presented to the court for settlement; that it would all depend upon whether a transcript of the record was subsequently obtained."

The petitioner denies the foregoing statement of the respondent in its entirety, "and alleges that at all times his said counsel gave the court to understand that he expected the Bill of Exceptions to be amended and hoped to secure a complete transcript of the testimony."

"And petitioner finally emphatically alleges that his counsel at no time stated to the court or intimated to the court that whether or not he would present the bill for settlement depended upon whether a transcript of the record was obtained.

"Petitioner alleges, however, that prior to the 31st of July, and prior to the filing of a proposed Bill of Exceptions, his counsel was in doubt as to whether or not an appeal would be taken in said cause, and did state to the respondent at different times that whether or not an appeal would be taken might depend upon whether or not he was able to secure a transcript of the testimony."

On September 10, 1931, the court reporter furnished petitioner's counsel with a complete transcript of the testimony, consisting of about 800 typewritten pages. On the same day, petitioner's counsel, in open court, in the presence of the United States attorney, requested the court to set a time for settling the bill of exceptions. The court announced that he would not then fix a time for the settlement of the bill, whereupon petitioner's counsel stated that it was necessary for him to leave Juneau, Alaska, where the court was then sitting, and to go to Ketchikan, to be absent about ten days. He requested the court for a further order extending the time to docket the case in the Circuit Court of Appeals, the court having previously granted orders for extension of time for such docketing. Thereupon the court made an order extending the time to docket until November 15, 1931.

On September 28, counsel for the petitioner, having returned to Juneau from Ketchikan, in open court, in the presence of the United States attorney, requested the court to fix a time for the settlement of the bill of exceptions.

The petitioner avers that the "court set Saturday, October 3, 1931, as the time for presenting said Bill for settlement."

The respondent asserts: "On or about September 10, 1931, said attorney informed me for the first time that he was ready to take up the matter of settling a Bill of Exceptions. At this time, the business of the court prevented me from considering said matter prior to the time said attorney proposed making a trip to Ketchikan; and said attorney stated that the matter could be taken up as well upon his return to Juneau. No bill of any kind was presented to me at this time."

On October 3, 1931, the matter of settling the bill was called up in open court, in the presence of petitioner's counsel and the United States attorney. The latter objected to the settlement of any bill of exceptions on the ground that the court was without jurisdiction to settle the bill or any bill of exceptions in the case. The court took the matter under advisement, "and thereafter," according to the petitioner, "on the ——— day of November, 1931, in open court rendered his decision in said matter, and then and there refused to sign or settle said Bill of Exceptions, or any Bill of Exceptions, in said cause, stating as the grounds for said refusal that the court was without jurisdiction to settle said Bill."

Here again there is sharp conflict disclosed in the sworn pleadings. The respondent states that he "specifically informed said attorney that my decision so to do was based upon my discretion in the matter, and not on the matter of jurisdiction"; and that: "Referring to the allegations of paragraph

fourteen of the Petition for Mandamus, I specifically deny that I stated, as alleged, that my refusal to settle a Bill of Exceptions was based upon the ground that the court was without jurisdiction to settle said bill."

From the foregoing statement of facts, which we have tried to make as fairly as the contradictory pleadings and supporting affidavits would permit, it will be seen that the first extension of time now questioned by the respondent was the one purported to have been made by the court on July 27, nunc pro tunc as of July 25, when the previous extension had expired.

It is extremely doubtful whether the court had, on July 27, jurisdiction to make a nunc pro tunc order as to the bill of exceptions in this case. It would seem that such jurisdiction had expired on July 25, that date marking the close of the previous extension period.

In Twohy Bros. Co. v. Kennedy, 295 F. 462, 463, the late Judge Gilbert, of this court, said: "It is to be conceded that, if the court had on August 2 lost its jurisdiction to permit the filing of the bill of exceptions, it could not by a mere order nunc pro tunc reinvest itself of that jurisdiction as of July 8. * * *" That case was followed by this court in the recent decision of Walton v. Southern Pacific Co., 53 F.(2d) 63, 68, in which the entire question of bills of exception is reviewed.

But if we assume that the nunc pro tunc order of July 27 was valid, and authorized a further valid extension of time until July 31, there are other, and, to our mind, conclusive reasons why the writ should not issue.

It is not contended by the petitioner that, on July 31, the court granted any further extension of time; but it is urged that "the filing within the term is effectual to authorize a formal presentation to the trial judge and signing and settlement after the term." In this contention, the petitioner relies upon two cases decided by this court.

In Pacific Bank v. Hannah et al., 90 F. 72, 76, this court said: "A motion has been made to dismiss the writ of error on the ground that the bill of exceptions, though filed within the term at which judgment was rendered, was not presented to, and allowed by, the judge of the court below until after the expiration of the term. We think that the fact that the bill of exceptions was filed within the term at which judgment was rendered is sufficient to preserve the rights of a party in presenting the bill of exceptions for allowance and settlement. [Many cases cited.]"

The foregoing decision was explained by this court in the case of Atchison, T. & S. F. Ry. Co. v. Nichols, 2 F.(2d) 12, 13, 14: "Plaintiff in error cites the opinion of this court in Pacific Bank v. Hannah * * *, where it was said that the bill of exceptions, having been filed within the term at which judgment was rendered, was sufficient to preserve the rights of a party presenting the bill of exceptions for allowance and settlement. That case is not in point, for there the findings and conclusions were filed March 24, 1897, and judgment was rendered on that day. Orders extending time to file exceptions to the findings and conclusions were made on that day, and several times thereafter during the term of court. The bill of exceptions was filed March 28th, and on June 2d a proposed amendment was filed and stipulation was had between counsel, extending time for further amendments until matters could be brought to the attention of the court. The February term was adjourned June 30, 1897, but the bill of exceptions was not signed until July, and doubtless upon the authority of Waldron v. Waldron, 156 U. S. 361, 15 S. Ct. 383, 39 L. Ed. 453, cited in the opinion, the signing of the bill of exceptions after the adjournment of the term at which judgment was rendered was sustained."

In Waldron v. Waldron, supra, the Supreme Court said, on page 378 of 156 U. S., 15 S. Ct. 383: "The signing of the bill of exceptions after the expiration of the term at which judgment was rendered, was lawful if done by consent of parties given during that term. [Cases cited.]"

We have no such consent in the instant case.

The other case cited by the petitioner in support of his argument that "filing" a proposed bill within the term saves the right to present the bill after the term is Sutherland et al. v. Pearce (C. C. A.) 186 F. 783, 786. There this court used language which indicates that it was dealing with facts far different from those at bar: "The objection is renewed here as made in the court below that the bill of exceptions was not made part of the record in the case until December 28, 1910, and it is claimed that this was after the time for filing a bill of exceptions had expired. We do not consider this objection well taken. The court entered an order on June 1, 1910, that the defendants should have four months within which to prepare and

file for allowance their bill of exceptions on appeal. This time expired on October 1, 1910. The defendants complied with this order, and filed with the court a bill of exceptions *which was signed by the judge on September 15, 1910,* and this bill of exceptions allowed by the court was filed with the clerk on October 17, 1910. We think this was a compliance with the order of the court. It was filed for allowance prior to October 1, 1910." [Italics our own.]

In the instant case we do not have a bill of exceptions that "was signed by the judge" before the extension of time had expired.

The petitioner admits that the "force" of the two cases cited by him has been "considerably weakened" by later decisions of this court, notably Atchison, etc., R. Co. v. Nichols, supra; Walton v. Southern Pacific Co., supra, and Maryland Casualty Co. v. Citizens' National Bank of Los Angeles (C. C. A.) 8 F.(2d) 216, 218, 219.

In the last-named case, the late Judge Rudkin of this court, said:

"March 14, 1925, upon stipulation of counsel for the parties, and at the instance of counsel for the defendant, the court made an order extending and enlarging the time within which to prepare and file a proposed bill of exceptions to and including April 15, 1925. April 14, 1925, a like order was made, under like circumstances, extending and enlarging the time to and including May 15, 1925. May 15, 1925, a third order was made, under like circumstances, extending and enlarging the time to and including June 15, 1925. June 8, 1925, the proposed bill of exceptions was served on counsel for the plaintiff, and was lodged with the clerk of the court two days later. June 9, 1925, by stipulation of counsel, and at the instance of counsel for the plaintiff, the time for proposing amendments to the proposed bill of exceptions was extended to and including July 9, 1925. July 8, 1925, the proposed amendments were filed and lodged with the clerk. In the meantime, on July 6, 1925, the writ of error was allowed. The term of court, at which the final judgment was entered, expired by limitation on Sunday, July 12, 1925, and no order was made at any time extending or enlarging the term for the purpose of settling the bill of exceptions, or otherwise. On July 22, 1925, counsel for plaintiff notified counsel for defendant that the time for settling the bill of exceptions had expired, and thereafter objected to its settlement or allowance for the same reason. But, notwithstanding this objection, the court below settled and allowed the bill of exceptions on July 29, 1925, after the expiration of the term.

"On the foregoing facts, the defendant in error has moved this court to strike the bill of exceptions because not allowed or certified within the term of court at which final judgment was entered, or within any extension thereof. This motion must be granted. * * *

"More than four months elapsed between the entry of the final judgment and the expiration of the term at which judgment was rendered. This was more than ample time for the preparation and settlement of a bill of exceptions. The delay was caused by courtesy of counsel and not by very extraordinary circumstances over which the plaintiff in error had no control. Indeed, the circumstances which prevented the settlement of the bill of exceptions within the time allowed by law were but commonplace and very ordinary. The bill of exceptions must therefore be disregarded. * * * *"

The Supreme Court has definitely settled when and to whom a bill of exceptions should be presented for settlement. In Michigan Insurance Bank v. Eldred, 143 U. S. 293, 298, 12 S. Ct. 450, 36 L. Ed. 162, Mr. Justice Gray said: "By the uniform course of decision, no exceptions to rulings at a trial can be considered by this court, unless they were taken at the trial, and were also embodied in a formal bill of exceptions presented to the *judge* at the same term, or within a further time allowed by order *entered at that term,* or by a standing rule of court, or by consent of parties; and, save under very extraordinary circumstances, they must be allowed by the judge and filed with the clerk during the same term. After the term has expired, without the court's control over the case being reserved by standing rule or special order, and especially after a writ of error has been entered in this court, all authority of the court below to allow a bill of exceptions then first presented, or to alter or amend a bill of exceptions already allowed and filed, is at an end. [Cases cited.]" (Italics our own.)

The closing paragraph of Exporters of Manufacturers' Products, Inc., v. Butterworth-Judson Co., 258 U. S. 365, 369, 42 S. Ct. 331, 66 L. Ed. 663, is as follows: "We think the better rule and the one supported by former opinions of this court requires that bills of exceptions shall be signed before

the trial court loses jurisdiction of the cause by expiration of the term or such time thereafter as may have been duly prescribed."

In addition to the foregoing authorities, there are numerous other cases holding that the filing or lodging of a proposed bill of exceptions with the clerk is not presentation to the judge.

A clear statement of the rule is contained in In re Bills of Exceptions (C. C. A. 6) 37 F.(2d) 849, 851:

"It follows that within the term, as stated or as properly extended, the bill of exceptions or narrative statement should be submitted to the judge personally, ready for his action, and his action invoked. * * *

"It is evident that, except as provided by rule, serving upon the other side a proposed bill of exceptions or lodging one with the clerk for examination and amendment are not effective steps towards extension of the time."

See, also, Cavana v. Addison Miller, Inc. (C. C. A. 9) 18 F.(2d) 278, 279; Farmers' Union Grain Co. v. Hallett & Carey Co. (C. C. A. 8) 21 F.(2d) 42, 43, 44, rehearing denied (C. C. A.) 22 F.(2d) 796, certiorari denied 276 U. S. 623, 48 S. Ct. 304, 72 L. Ed. 737; Goetzinger et al. v. Woodley et al. (C. C. A. 4) 17 F.(2d) 83, 84; Ritz Carlton Restaurant & Hotel Co. of Atlantic City v. Gillespie et al. (C. C. A. 3) 1 F.(2d) 921, 922; H. P. Cummings Const. Co. v. Marbleloid Co. (C. C. A. 3) 51 F.(2d) 906, 907; Costello v. Ferrarini et al. (C. C.) 165 F. 379, and, as to the effect of filing a petition for appeal in the clerk's office, Von Holt, etc. v. Carter, Trustee et al., 56 F.(2d) 61, decided by this court on February 15, 1932.

In the instant case, a rule of the District Court of Alaska, First Division, provides that the bill of exceptions shall be "submitted" to the "court," and that the "court" will "thereupon fix a time to settle the bill and notify counsel thereof." Clearly, the "court" in this provision does not mean the clerk, since the clerk would not have the authority to fix a time for settling the bill.

But, argues the petitioner, the rule of court just referred to "has not been generally followed in this jurisdiction, but on the contrary it has been the custom and practice that when a proposed Bill of Exceptions is served upon the opposing party and filed with the Clerk of the Court, * * * the bill is allowed to lie until amendments have been proposed by the opposing party or un-til the bill is called up in open court for settlement."

The petitioner adds, however, that he "does not mean to state that said rule has never been followed."

As against this qualified assertion, the respondent offers three affidavits: One by the respondent himself, one by the clerk of the court, and one by the United States attorney. All three of these officials solemnly swear, in effect, that the rule referred to in a previous paragraph has never been relaxed.

Generally speaking, the burden of proof rests with the moving party. This is especially true when the moving party alleges a "relaxation" of formal rules of court. Surely it cannot be argued that the petitioner herein has sustained this burden, in the face of three categorical denials by sworn officers of the court.

Finally, the respondent avers, under oath, that: "It did not seem to me that the ends of justice would be served by permitting an attorney deliberately to delay the matter and defeat the limitations imposed, by leaving with the Clerk a pretended bill of 44 pages, on which he did not intend to rely, and later, at his own convenience, presenting for settlement an entirely new bill consisting of 823 pages. I felt then, and still feel, that such a practice would leave the court at the mercy of any attorney desiring to defeat any limitations of time fixed by the court for presenting a Bill of Exceptions. I did not consider the bill presented an amended bill. It was an entirely new bill, and it was so represented to me by said attorney. The transcript was not reduced to narrative form in any particular or at all; and in order for me to give effect to Rule 10 of the Appellate Court, considerable further delay would have resulted."

In his answer to the respondent's return, the petitioner does not deny the foregoing statement, and it may therefore be taken as true. Rule 10 of this court, referred to by the respondent, is, in part, as follows: "2. Only so much of the evidence shall be embraced in a bill of exceptions as may be necessary to present clearly the questions of law involved in the rulings to which exceptions are reserved, and such evidence as is embraced therein shall be set forth in condensed and narrative form, save as a proper understanding of the questions presented may require that part of it be set forth otherwise."

It is clear that a purported proposed bill of exceptions 823 typewritten pages long,

not reduced to narrative form, in no way meets the plain requirements of Rule 10.

We believe that the court had no discretion in this matter, and was bound to decline to settle such a proposed bill. A fortiori, if it be contended that the court did have discretion, we cannot hold that the trial judge abused this discretion in so declining.

A party seeking to invoke the aid of appeal should place himself in a position where he can demonstrate that he has fully complied with the rules of court, the statutory requirements, and the practice approved by settled jurisprudence, relative to the prosecution of appeal.

This the petitioner has wholly failed to do, and accordingly the petition for mandamus is denied.

Petition denied.